IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                       Plaintiff,<br><br>    v.<br><br>MATTHEW WILSON MOI,<br>a/k/a "Matt Matt"<br><br>                       Defendant. | Case No. 3:19-cr-00112-TMB-SAO-2<br><br><br>ORDER ON DEFENDANT MOI AND GOVERNMENT'S MOTIONS IN LIMINE (DKTS. 460, 463, & 494) |

Before the Court are three separate motions *in limine*—two filed by Defendant Matthew Wilson Moi and one filed by the Government.[1] Moi's first Motion *in Limine* ("Moi's First Motion") seeks to preclude the Government from eliciting testimony regarding Moi's 2004 Washington murder charges, which are described in *State v. Moi*, 2011 WL 6825264 (Wash. App. 2011).[2] The Government does not take a position on Moi's First Motion, but states it "does not intend to present evidence that the defendant murdered another victim in Washington in 2004."[3] Moi's second Motion *in Limine* ("Moi's Second Motion") seeks to preclude the Government from eliciting (1) evidence of an alleged plot to kill CS-1; (2) general testimony regarding Moi's firearm possession; and (3) evidence Moi devised a plan to murder Myrick Elliott in September 2019.[4] The Government opposes Moi's Second Motion and argues the evidence is relevant and

---

[1] Dkt. 463 (Moi's First Motion *in Limine*); Dkt. 460 (Government's Motions *in Limine*); Dkt. 494 (Moi's Second Motion *in Limine*).

[2] Dkt. 463.

[3] Dkt. 474 (Government's Response to Moi's First Motion *in Limine*) at 1.

[4] Dkt. 494.

admissible.[5] In its own motion *in limine* ("Government's Motions"), the Government seeks to limit the scope and nature of the admission of Jordan Shanholtzer's and Kyle Dwiggins's prior criminal convictions.[6] Moi opposes the Government's Motions and offers notice of his intent to use the convictions identified by the Government pursuant to Federal Rule of Evidence 609(b)(2).[7]

For the following reasons, Moi's First Motion at Docket 463 is **GRANTED**; Moi's Second Motion at Docket 494 is **GRANTED IN PART and DENIED IN PART**; and the Government's Motions at Docket 460 are **GRANTED IN PART and DENIED IN PART.**

I. BACKGROUND

On October 18, 2019, the Government filed an Indictment charging Moi and four others with drug conspiracy.[8] On September 15, 2020, a grand jury returned a Superseding Indictment naming one additional co-defendant and charging defendants with Continuing Criminal Enterprise (Count 1), Drug Conspiracy (Count 2), Money Laundering Conspiracy (Count 3), Using A Firearm to Commit Murder in Furtherance Of Drug Trafficking Crime (Count 4), and Killing in Furtherance of Continuing Criminal Enterprise (Count 5).[9] Moi is charged with Counts 2 through 5.[10] The case was declared complex in November 2020.[11] Since then, charges against

---

[5] Dkt. 505 (Government's Opposition to Moi's Second Motion *in Limine*).

[6] Dkt. 460.

[7] Dkt. 479 (Moi's Response to Government Motions *in Limine*).

[8] Dkt. 12 (Indictment).

[9] Dkt. 189 (First Superseding Indictment).

[10] *Id.*

[11] Dkt. 237 (Minute Entry).

Moi's co-defendants have been resolved, and Moi remains the sole defendant in this case. Trial is set to begin on February 22, 2022.[12]

## II. FACTS

The Government alleges that Moi conspired to distribute illicit drugs in Alaska.[13] According to the Government, several packages intended for Moi were intercepted by law enforcement, including one in April 2019 that was sent to Navarrow Andrews's address. The Government asserts that despite repeated attempts, Moi was unable to retrieve the package from Andrews.[14] Believing that Andrews had stolen the package, the Government alleges, Moi killed Andrews.[15]

The Government asserts despite leaving Alaska following Andrews's death, Moi remained an active participant in the criminal enterprise.[16] In September 2019, law enforcement intercepted a second shipment, this time of heroin intended for CS-1[17] in Wasilla, Alaska.[18] CS-1 permitted law enforcement agents to monitor his communications with individuals he purported to be Moi and Jordan Shanholtzer as they directed CS-1 how to distribute the heroin.[19] According to the

---

[12] Dkt. 516 (Order re: Moi's Fifth Motion to Continue Trial) at 1.

[13] *See* Dkt. 189.

[14] *Id.* at 5.

[15] *See id.*; Dkt. 505 at 1–2.

[16] Dkt. 189 at 6.

[17] In their briefing, both parties refer to the unnamed individual as CS-1.

[18] Dkt. 189 at 6.

[19] Dkt. 494 at 4.

3

Government, CS-1 was instructed to deliver some of the heroin to Elliott.[20] After monitoring the delivery of heroin to Elliott, agents briefly apprehended Elliott and seized the heroin.[21] The disappearance of the heroin aroused suspicion and allegedly led Shanholtzer to believe that Elliott had lied about the whereabouts of the heroin and had actually stolen it.[22] The parties dispute whether a plan developed to address the missing heroin.[23] But before any alleged plan was carried out, Moi was arrested in Los Angeles, California.[24]

### III. LEGAL STANDARD

"A motion *in limine* is a procedural device to obtain an early and preliminary ruling on the admissibility of evidence."[25] Motions *in limine* are appropriate when the "mere mention of evidence during trial would be highly prejudicial."[26] Motions *in limine* "should not be used to resolve factual issues or weigh evidence."[27]

---

[20] *Id.*

[21] *Id.* at 5.

[22] *Id.*

[23] *Id.*

[24] Dkt. 505 at 2.

[25] *Barnard v. Las Vegas Metro. Police Dep't*, No. 2:03-cv-01524-RCJ-LRL, 2011 WL 221710, at *1 (D. Nev. Jan. 21. 2011); *Research Corp. Techs., Inc. v. Microsoft Corp.*, No. CV-01-658-TUC-RCJ, 2009 WL 2971755, at *1 (D. Ariz. Aug. 19, 2009).

[26] *Barnard*, 2011 WL 221710, at *1 (quoting *Black's Law Dictionary* 1109 (9th ed. 2009)); *Research Corp.*, 2009 WL 2971755, at *1 (similar).

[27] *Barnard*, 2011 WL 221710, at *1 (citations omitted); *BNSF Ry. Co. v. Quad City Testing Lab., Inc.*, No. CV-07-170-BLG-RFC, 2010 WL 4534406, at *1 (D. Mont. Oct. 28, 2010) (citations omitted); *Research Corp.*, 2009 WL 2971755, at *1 (citations omitted).

A party seeking to exclude evidence through a motion *in limine* must satisfy a "high standard" and show the evidence is inadmissible on all potential grounds.[28] Otherwise, "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context."[29] A court's rulings on motions *in limine* are provisional and may be reconsidered during the course of trial.[30] A denial of a motion *in limine* merely means that the court is unable to determine whether the evidence should be excluded outside of the context of trial.[31]

### A. Rules 403 and 404

As a general rule, Federal Rule of Evidence ("Rule") 404(b)(1) provides that evidence of a person's prior crimes, wrongs, or acts are inadmissible "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."[32] "The rule is designed to avoid a danger that the jury will punish the defendant for offenses other than those charged."[33] However, because such evidence may be highly relevant, Rule 404(b)(2) provides that evidence of a person's prior crimes, wrongs, or acts "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake,

---

[28] *Barnard*, 2011 WL 221710, at *1 (citations omitted); *BNSF*, 2010 WL 4534406, at *1 (citations omitted); *Research Corp.*, 2009 WL 2971755, at *1 (citations omitted).

[29] *Barnard*, 2011 WL 221710, at *1 (citations omitted); *BNSF*, 2010 WL 4534406, at *1 (citations omitted); *Research Corp.*, 2009 WL 2971755, at *1 (citations omitted).

[30] *Barnard*, 2011 WL 221710, at *2 (citing, *inter alia*, *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000)); *Research Corp.*, 2009 WL 2971755, at *2 (same).

[31] *Barnard*, 2011 WL 221710, at *2; *BNSF*, 2010 WL 4534406, at *; *Research Corp.*, 2009 WL 2971755, at *2.

[32] Fed. R. Evid. 404(b)(1); *see also United States v. Charley*, 1 F.4th 637, 645 (9th Cir. 2021).

[33] *Charley*, 1 F.4th at 647.

5

or lack of accident."[34] To introduce evidence under Rule 404(b), the Government must prove that the proposed evidence satisfies four requirements:

> (1) the evidence tends to prove a material point (materiality); (2) the other act is not too remote in time (recency); (3) the evidence is sufficient to support a finding that defendant committed the other act (sufficiency); and (4) … the act is similar to the offense charged (similarity).[35]

But even under this circumstance, "[t]he use of such evidence must be narrowly circumscribed and limited."[36]

If the Court finds these requirements are met, it must then determine, under Rule 403, whether the "probative value [of the evidence] is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[37]

### B. Rule 609

Separately, Rule 609 "provides that the credibility of a witness may be attacked during cross-examination by establishing that he has been convicted of a crime."[38] Two factors dictate the standard the Court applies to determine whether to permit the use of a prior conviction for impeachment purposes: (1) the age and nature of the conviction, and (2) whether the witness is the defendant.[39] Where a party seeks to impeach a defendant with a prior conviction punishable by

---

[34] Fed. R. Evid. 404(b)(2).

[35] *Charley*, 1 F.4th at 647.

[36] *Id.* (quoting *United States v. Bailleaux*, 685 F.2d 1105, 1109 (9th Cir. 1982)).

[37] Fed. R. Evid. 403; *see also United States v. Vo*, 413 F.3d 1010, 1018 (9th Cir. 2005).

[38] *United States v. McClintock*, 748 F.2d 1278, 1288 (9th Cir. 1984).

[39] Fed. R. Evid. 609.

death or imprisonment for more than one year, the conviction must be admitted "if the probative value of the evidence outweighs its prejudicial effect to that defendant."[40] But where the witness is not the defendant, use of the prior conviction for impeachment is subject to Rule 403.[41] The parties may use any crime involving a "dishonest act or false statement" to impeach a witness.[42] The Ninth Circuit provides "five factors that a district court should consider in balancing the probative value of evidence of a defendant's prior convictions against that evidence's prejudicial effect . . .

> (1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of defendant's testimony; and (5) the centrality of defendant's credibility.[43]

Courts also consider how much time has elapsed before permitting a party to use a prior criminal conviction to impeach a witness.[44] Where "more than ten years have passed since the witness's conviction or release from confinement for it, whichever is later," evidence of a witness's conviction is admissible only if:

> (1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and

> (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use.[45]

---

[40] Fed. R. Evid. 609(a)(1).

[41] *Id.*

[42] Fed. R. Evid. 609(a)(2).

[43] *United States v. Hursh*, 217 F.3d 761, 768 (9th Cir. 2000) (citing *United States v. Browne*, 829 F.2d 760, 762–63 (9th Cir. 1987)).

[44] Fed. R. Evid. 609(b).

[45] *Id.*

Finally, "absent exceptional circumstances, evidence of a prior conviction admitted for impeachment purposes may not include collateral details and circumstances attendant upon the conviction."[46] "Generally, 'only the prior conviction, its general nature, and punishment of felony range [are] fair game for testing the defendant's credibility.'"[47]

IV. DISCUSSION

A. *Moi's 2004 Washington Murder Charges*

Moi argues that the introduction of any evidence related to the murder charges he faced in Washington State in *State v. Moi*, 2011 WL 6825264 (Wash. App. 2011), which were later overturned in *In re Moi*, 360 P.3d 811, 812 (Wash. 2015), are not relevant to this case and "any hypothetical relevance is outweighed by the prejudicial impact evidence of these allegations."[48] The Government responds that it "does not intend to present evidence that the defendant murdered another victim in Washington in 2004."[49] For the Government to use this prior criminal conviction to impeach Moi, the Court would need to find that "the probative value of the evidence outweighs its prejudicial effect,"[50] or to introduce the conviction as evidence for a permitted purpose, the parties would need to identify a permitted use.[51] Here, the Government has done neither. Therefore, because the Court finds the introduction of *State v. Moi*, 2011 WL 6825264 (Wash.

---

[46] *United States v. Osazuwa*, 564 F.3d 1169, 1175 (9th Cir. 2009) (quoting *United States v. Sine*, 493 F.3d 1021, 1036 n. 14 (9th Cir. 2007)) (internal quotations removed).

[47] *Id.* (quoting *United States v. Albers*, 93 F.3d 1469, 1480 (10th Cir. 1996)).

[48] Dkt. 463 at 1.

[49] Dkt. 474 at 1.

[50] Fed. R. Evid. 609(a)(1)(B).

[51] Fed. R. Evid. 404.

8

App. 2011), is likely to be prejudicial and yield unknown probative value, the Court grants Moi's First Motion.

### B. Plot to Kill CS-1

In Moi's Second Motion, Moi argues that under Rules 403 and 404 the Court should exclude evidence that a "supposed 'hitman'" was hired to kill CS-1 in October 2020.[52] Moi asserts the introduction of such a plot would be highly prejudicial and bears no probative value because the Government has not charged the "supposed 'hitman'"[53] or identified any evidence linking Moi to any such plot.[54] The Government objects and argues that it should be permitted to introduce evidence of a plot to kill CS-1 in order to explain the basis for payments the Drug Enforcement Agency ("DEA") made to CS-1.[55] The Government says it intends to introduce evidence of the plot only if Moi introduces evidence about payments made to CS-1 by the DEA. The Government also states that it "does not oppose a limiting instruction explaining that the payments are not evidence that the threats were real, or that they came from Moi."[56]

The Court acknowledges that without proper limitation, evidence of a plot to kill CS-1 could be highly prejudicial to Moi given the serious nature of the allegation and the risk a jury may mistakenly infer that Moi was involved in the plot. However, at this time, the risk of mistake appears low because neither party has identified evidence that links Moi to the plot. Moreover, the Government has identified a specific, probative purpose for introducing the evidence—to explain

---

[52] Dkt. 494 at 3.

[53] *Id.*

[54] *Id.*

[55] Dkt. 505 at 3–4.

[56] *Id.* at 4.

9

why DEA paid the witness. Therefore, the Court finds that the danger of unfair prejudice to Moi is not likely to substantially outweigh the probative value of the evidence. If, however, such evidence were to be introduced at trial, the Court finds that a limiting instruction would be appropriate to further mitigate any potential prejudice to Moi. But because questions remain related to the foundation, relevancy, and potential prejudice of the evidence related to a plot to kill CS-1, the Court concludes it would be inappropriate to make a determination on the admissibility of such evidence through a motion *in limine*. For these reasons and because of the conditional nature of the proposed evidence related to a plot to kill CS-1, at this time, the Court denies Moi's request to preclude the introduction of evidence related to the plot. Furthermore, the Government must make a proper application to the Court if it intends to introduce evidence of a plot to kill CS-1.

### C. Moi's Firearm Possession

In Moi's Second Motion, he also argues that under Rules 403 and 404, the Government should be precluded from eliciting testimony regarding Moi's prior firearm possession. Specifically, Moi cites Isaiah Roderick's testimony regarding his knowledge of Moi's past firearm possession, including that Moi had a "Draco with a 'big drum'" and "a handgun, possibly an 'XD' of unknown caliber."[57] Moi argues that Roderick's testimony would be unfairly prejudicial because it does not definitively prove Moi possessed a Glock 10 mm, which is believed to have been used to shoot Andrews, and because Roderick did not specify when he witnessed Moi in possession of firearms. Moi argues that "such evidence risks unfair prejudice to Mr. Moi making

---

[57] Dkt. 494 at 4.

it likely that the jury might use this evidence to convict Mr. Moi on improper grounds by drawing negative propensity inferences from his past, unrelated, weapon possession."[58]

The Government objects and states that it intends to call witnesses at trial who will testify that Moi owned and carried firearms. The Government argues that because the killing of Andrews was committed with a firearm, Moi's access to firearms is relevant to show his ability to commit the charged offense.[59] The Government also argues that possession of a firearm alone is not stigmatized in Alaska and is therefore unlikely to prejudice Moi.[60]

The Court generally agrees with the Government that under Rules 403 and 404, evidence that Moi possessed firearms in the presence of an alleged co-conspirator is relevant to show opportunity and that, in Alaska, possession of a firearm alone is not so prejudicial that the risk of unfair prejudice substantially outweighs the evidence's probative value. Here, the Government must show that Moi had access to a firearm to prevail in at least one of the charges. In two of the other counts, access to firearms may be relevant evidence.[61] Whether Moi possessed a Glock 10 mm or other firearms at particular times can be challenged by Moi at trial. Furthermore, firearm

---

[58] *Id.*

[59] Dkt. 505 at 4.

[60] *Id.*

[61] *See United States v. Street*, 548 F.3d 618, 625 (8th Cir. 2008) ("Firearms are routinely allowed into evidence as 'tools of the trade' in drug trafficking cases."); *see also United States v. Taylor*, 767 F. Supp. 2d 428, 438 (S.D.N.Y. Dec. 1, 2010) ("The Court finds that Rosario's prior gun possession is . . . admissible to demonstrate [the Defendant's] ability to access such a weapon.").

possession alone is "only slightly prejudicial, if at all."[62] For these reasons, the Court declines to preclude the introduction of evidence regarding Moi's firearm use or possession at this time.

### D. Plan to Murder Elliott

Finally, in Moi's Second Motion, he argues that under Rules 403 and 404 the Government should be precluded from eliciting evidence that Moi planned to murder Elliott. Moi identifies several audio recordings between CS-1 and individuals purported to be Shanholtzer and Moi, which he states show "it is far from definite that such a plan was ever made."[63] Moi argues in the alternative that if a plan to murder Elliott actually existed, "this plan has little relevance to a non-propensity purpose."[64] Moi further argues that this evidence would be "cumulative," "marginally probative," and more prejudicial than other evidence that could be presented to show Moi's participation in an alleged drug distribution conspiracy, including cellphone, travel, and bank records and the testimony of alleged co-conspirators.[65] Moi argues that based on this type of evidence "a jury would be likely to use this evidence to draw negative propensity inferences against Moi—*e.g.*, that, because he planned to murder Elliott, he is a murderer and likely murdered Andrews." The Government objects and argues that statements by Moi after the heroin shipment was intercepted are relevant and should be admitted to show Moi's direct involvement in the criminal enterprise. The Government also argues that the recordings show Moi's intent to engage in "violent retaliation against a former accomplice whom he believed to have stolen a large amount

---

[62] *United States v. Collins*, 604 F.3d 481, 487 (7th Cir. 2010); *Dist. of Columbia v. Heller*, 554 U.S. 570 (2008) (Americans may lawfully possess and use firearms, and have a constitutional right to do so).

[63] Dkt. 494 at 5–6.

[64] *Id.* at 6.

[65] *Id.* at 7.

of narcotics," which is particularly relevant because Moi has allegedly admitted to killing Andrews, but "did so accidentally."[66]

Rule 404 permits the admission of crimes, wrongs, or acts that would otherwise be inadmissible to show intent.[67] To introduce evidence under Rule 404(b), the Government must show materiality, recency, sufficiency, and similarity.[68] Because the Government argues that the recordings and evidence of Moi's alleged plan to kill Elliott show intent, the Court considers the materiality, recency, sufficiency, and similarity of the proposed evidence. The alleged plot to kill Elliott is not dissimilar from the charges Moi faces for allegedly killing Andrews in furtherance of a drug conspiracy—both plots were allegedly devised for the purpose of retaliating against a person who was believed to have stolen a drug delivery from the enterprise. Further the killing of Andrews and the alleged plot to kill Elliott occurred only months apart. However, at this time, Moi has not represented that he unintentionally killed Andrews. Absent evidence creating doubt about whether Moi's actions were intentional, evidence of a plot to kill Elliott, that is unrelated to the killing of Andrews and cumulative of Moi's participation in an alleged conspiracy, is likely to be highly prejudicial to Moi and is unlikely to yield probative evidence. The Court therefore grants Moi's motion at this time with the caveat that the probative value of evidence of a similar plot may change if questions arise related to Moi's intent related to the death of Andrews.

---

[66] Dkt. 505 at 7.

[67] Fed. R. Evid. 404(b)(2).

[68] *Charley*, 1 F.4th at 647.

### E. Shanholtzer's Prior Criminal Convictions

In the Government's Motions, the Government seeks to limit the nature and scope of the admission of Shanholtzer's prior criminal convictions at trial. The Government has identified the following prior criminal convictions for Shanholtzer:

- 3AN-05-10414, Misconduct Involving Controlled Substances in the Fourth Degree, State of Alaska, conviction date of January 5, 2007.
- 3:07-cr-00090-JWS, Drug Distribution, United States District Court, District of Alaska, conviction date of December 18, 2008.
- 3AN-07-5025, Resisting Arrest, Attempted Escape, Assault in the Fourth Degree, and Failure to Appear, State of Alaska, conviction date of March 26, 2009.
- 3AN-07-461, Assault in the Third Degree, State of Alaska, conviction date of April 10, 2009.
- 3AN-16-2065, Operating Under the Influence, State of Alaska, conviction date of March 31, 2016.[69]

The Government argues that Shanholtzer's convictions in 3AN-16-2065 and 3AN-07-5025 are inadmissible under Rule 609 for impeachment purposes as they are convictions for crimes punishable by less than one year imprisonment.[70] Moi does not present any argument to the contrary. The Court finds 3AN-16-2065 and 3AN-07-5025 are inadmissible under Rule 609.

The Government argues that Shanholtzer's conviction in 3AN-05-10414 is inadmissible under Rule 609 for impeachment purposes because he was convicted on January 5, 2007, and sentenced to only six months of imprisonment, therefore his conviction and release from confinement were more than 10 years prior.[71] Moi does not present any argument to the contrary. The Court finds 3AN-05-10414 is inadmissible under Rule 609.

---

[69] Dkt. 460 at 2.

[70] *Id.* at 3.

[71] *Id.*

The Government concedes that Shanholtzer's convictions in 3:07-cr-00090-JWS and 3AN-07-461 may be admissible, but argues that the Court should preclude Moi from eliciting evidence regarding the convictions because "[h]is prior convictions have little relevance into his character for untruthfulness,"[72] and would likely be used in a prejudicial manner.[73] In 3:07-cr-00090-JWS, Shanholtzer was convicted for a drug distribution crime,[74] and in 3AN-07-461, Shanholtzer was convicted of assault.[75] The Government further stated that it "expects Mr. Shanholtzer to testify at trial that he was an active drug trafficker in Anchorage, Alaska during the course of the charged conspiracy."[76] Moi does not present an argument that the probative value of these convictions substantially outweighs their prejudicial effect under Rule 609 or identify a permitted use of the convictions under Rule 404. Absent a specific argument for their admission, at this time, the Court finds Shanholtzer's convictions in 3:07-cr-00090-JWS and 3AN-07-461 inadmissible under Rule 609.

### F. Dwiggins's Prior Criminal Convictions

The Government also seeks to limit the nature and scope of the admission of Dwiggins's prior criminal convictions. The Government has identified the following prior criminal convictions for Dwiggins:

- 3AN-06-5695, Theft in the First and Second Degree, State of Alaska, conviction date of January 22, 2007.
- 3AN-07-8137, Theft in the Second Degree, State of Alaska, conviction date of January 22, 2008.

---

[72] *Id.* at 4.

[73] *Id.* at 3.

[74] *Id.*

[75] *Id.*

[76] *Id.* at 3–4.

15

- 3AN-11-13579, Scheme to Defraud, State of Alaska, conviction date of August 30, 2013.

The Government argues that Dwiggins's convictions in 3AN-06-5695 and 3AN-07-8137 are inadmissible as they are more than 10 years old.[77] Moi opposes the Government's Motions.

Moi does not specifically address Dwiggins's theft conviction in 3AN-07-8137. The conviction date was January 22, 2008, more than 10 years ago. Without argument "supported by specific facts and circumstances" for how this theft conviction's probative value substantially outweighs its prejudicial effect in this trial, the Court finds evidence of Dwiggins's conviction in 3AN-07-8137 inadmissible at the trial at this time.[78]

Moi argues the convictions in 3AN-06-5695 may be introduced because (1) the conviction is not 10 years old within the meaning of Rule 609, but (2) even if the conviction is over 10 years old, "the probative value of the evidence substantially outweighs any prejudicial effect of admission," and it is, therefore, admissible under the rule.[79] Moi argues that 3AN-06-5695 is less than 10 years old within the meaning of Rule 609 because "Dwiggins was incarcerated for parole and probation violations—for committing a new crime of dishonesty, the Scheme to Defraud alleged in 3AN-11-13579—as recently as 2016, which brings his release on the offense well within the 10-year window contemplated by Rule 609."[80] Moi relies on *United States v. McClintock* as support for this argument.[81] In *McClintock*, the court found that "reconfinement pursuant to parole revocation is 'confinement imposed for' [the original] conviction" where the "violation involved

---

[77] *Id.* at 5.

[78] Fed. R. Evid. 609(b).

[79] Dkt. 479 at 2.

[80] *Id.*

[81] 748 F.2d 1278 (1984).

16

a substantive probation condition and closely parallels the initial, fraudulent activity." Here, Dwiggins was initially incarcerated in 3AN-06-5695 for theft and later incarcerated for "parole and probation violations" after he was convicted of a Scheme to Defraud alleged in 3AN-11-13579.[82] It is not clear from the parties' briefing whether Dwiggins's commission of subsequent crime violated a substantive condition of his parole or probation terms. Further, based on the parties' briefing, it is also not clear whether the initial theft and later scheme to defraud were related in any way. For these reasons, the Court cannot conclude that these circumstances mirror the "narrow variant" addressed by the Ninth Circuit in *McClintock* and finds that if Moi wishes to impeach Dwiggins using 3AN-06-5695, he needs to show that the probative value of the conviction substantially outweighs its prejudicial effect pursuant to Rule 609(b).[83] Moi has not made such a showing. However, Dwiggins's conviction in 3AN-11-13579 for a scheme to defraud is a crime of dishonesty and admissible for impeachment purposes under Rule 609(a)(2).[84]

### G. CONCLUSION

For the foregoing reasons, the Court:

- **GRANTS** Moi's Motion *in Limine* Re Alleged Prior Misconduct at Docket 463;

- **GRANTS IN PART** and **DENIES IN PART WITHOUT PREJUDICE** Moi's Second Motion *in Limine* at Docket 494 is, specifically the Court:
  - **DENIES** Moi's request to preclude the introduction of evidence related to a plot to kill CS-1;
  - **DENIES** Moi's request to preclude the introduction of evidence related to Moi's past firearm possession; and

---

[82] Dkt. 479 at 2.

[83] Fed. R. Evid. 609(b).

[84] AS 11.46.600.

- **GRANTS** Moi's request to preclude the introduction of evidence related to a plot to kill Elliott; and

- **GRANTS IN PART** and **DENIES IN PART WITHOUT PREJUDICE** the Government's Motions *in Limine* at Docket 460, specifically the Court:

    - **GRANTS** the Government's request to preclude the use of Shanholtzer's prior criminal convictions for impeachment purposes in the following cases: (1)3AN-05-10414, (2) 3:07-cr-00090-JWS, (3) 3AN-07-5025, (4) 3AN-07-461, and (5) 3AN-16-2065; and
    - **GRANTS** the Government's request to preclude the use of Dwiggins's prior criminal convictions for impeachment purposes in the following cases: (1) 3AN-06-5695 and (2) 3AN-07-8137; and
    - **DENIES** the Government's request to preclude the use of Dwiggins's prior criminal conviction in case number 3AN-11-13579.

These rulings on the motions *in limine* are provisional and may be reconsidered during trial. Finally, nothing in this Order relieves the parties of any requirements to make proper application to the Court before seeking to admit evidence.

    IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 10th day of February, 2022.

/s/ *Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE