IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                      Plaintiff,<br><br>    v.<br><br>MATTHEW WILSON MOI,<br>a/k/a "Matt Matt"<br><br>                      Defendant. | Case No. 3:19-cr-00112-TMB-SAO-2<br><br>ORDER ON DEFENDANT MOI'S<br>MOTION *IN LIMINE* TO EXCLUDE<br>EVIDENCE UNDER<br>FED. R. EVID. 403 & 404<br>(DKT. 575) |

## I. INTRODUCTION

The matter comes before the Court on Defendant Matthew Wilson Moi's Motion *in Limine* to Exclude Evidence Under Fed. R. Evid. 403 & 404 (the "Motion").[1] Moi specifically requests the Court preclude the introduction of particular portions of audio recordings from telephone and Facetime calls. The Government opposes the Motion.[2] Oral argument was not requested, and the Court finds the matter suitable for disposition without oral argument. For the following reasons, Moi's Motion at Docket 575 is **GRANTED.**

## II. BACKGROUND

Moi previously filed two motions *in limine* related to the telephone and Facetime recordings now at issue.[3] In Moi's initial motion *in limine* related to the calls, Moi asked the Court

---

[1] Dkt. 575 (Motion).

[2] Dkt. 576 (Opposition).

[3] Dkt. 494 (Moi's Second Motion *in Limine*); Dkt. 546 (Moi's Motion *in Limine*).

1

to "preclude the government from eliciting testimony about Moi allegedly planning to murder Elliot[t]."[4] In that motion, Moi asserted there were at least two witnesses he expected to testify about an alleged plan to kill Elliott. Moi anticipated testimony from (1) Jordan Shanholtzer because he had "told law enforcement that Mr. Moi said he would 'go to Alaska and take care of it.' (Bates 57717)," which "Shanholtzer said he 'understood Moi to mean he would kill Elliot' for stealing the heroin. (Bates 57717)" and (2) CS-1.[5] In that initial motion, Moi pointed to the contemporaneous audio recordings as evidence that "neither Shanholtzer, nor the caller alleged to be Moi, threaten Elliot[t] explicitly or discuss harming anyone in response to the disappearance of the heroin."[6] The Government in turn argued that evidence of a plot to kill Elliott "is especially important" because the Government is anticipated to introduce evidence that "Moi has admitted to shooting the homicide victim, but claimed that he did so accidentally."[7] Based on the parties' arguments, the Court concluded "[a]bsent evidence creating doubt about whether Moi's actions were intentional, evidence of a plot to kill Elliott, that is unrelated to the killing of Andrews and cumulative of Moi's participation in an alleged conspiracy, is likely to be highly prejudicial to Moi and is unlikely to yield probative evidence."[8]

Moi then filed a subsequent motion *in limine* affirmatively seeking to "preclude audio recordings of an alleged plot to kill Myrick Elliott in September 2019 under Rule 403 and 404."[9]

---

[4] Dkt. 494 at 6.

[5] *Id.* at 5.

[6] *Id.* at 6.

[7] Dkt. 505 at 7 (Government Opposition to Moi's Second Motion *in Limine*).

[8] Dkt. 543 (Order re Motions *in Limine*).

[9] Dkt. 546 at 1.

2

Moi argued that "[t]he recordings are the primary evidence the government would admit of the plot"[10] and "precisely the evidence that Mr. Moi sought to preclude" because they "invite[] the improper and prejudicial findings the Court sought to avoid."[11] However, Moi conceded that "evidence from the recordings *other than the alleged plot against Elliott* may be admissible, subject to proper foundation and a showing of relevance."[12] The Government contested Moi's characterization of the audio recordings and argued that the recordings show Moi's "knowledge of and involvement in the narcotics distribution enterprise."[13] The Court then invited Moi to "identify[] those portions [of the audio recordings] which he believes are unfairly prejudicial."[14] Moi now files a third Motion *in Limine* related to the audio recordings in which he identifies specific portions of the recordings that should be precluded.

As the Court previously found, evidence of an alleged plan to kill Elliott "is likely to be highly prejudicial to Moi and is unlikely to yield probative evidence" related to whether Moi killed Navarrow Andrews.[15] Moi has argued in earlier motions both that the telephone and Facetime recordings related to Elliott were evidence of a plot to kill Elliott and evidence that such a plot never existed. The Court is now left to determine whether specific portions of the audio recordings should be redacted or excluded because their probative value is substantially outweighed by a danger of unfair prejudice.

---

[10] *Id.* at 2.

[11] *Id.*

[12] *Id.* at 3.

[13] Dkt. 548 at 4.

[14] Dkt. 570 at 7.

[15] Dkt. 543 at 13.

3

### III. LEGAL STANDARD

*A. Motions in Limine*

"A motion *in limine* is a procedural device to obtain an early and preliminary ruling on the admissibility of evidence"[16] and may be used to request evidence be either excluded or admitted before trial.[17] Motions *in limine* are appropriate when the "mere mention of evidence during trial would be highly prejudicial."[18] "*[I]n limine* rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial."[19]

A party seeking to exclude evidence through a motion *in limine* must satisfy a "high standard" and show the evidence is inadmissible on all potential grounds.[20] Otherwise, "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context."[21]

---

[16] *Barnard v. Las Vegas Metro. Police Dep't*, No. 2:03-cv-01524-RCJ-LRL, 2011 WL 221710, at *1 (D. Nev. Jan. 21. 2011); *Research Corp. Techs., Inc. v. Microsoft Corp.*, No. CV-01-658-TUC-RCJ, 2009 WL 2971755, at *1 (D. Ariz. Aug. 19, 2009).

[17] *See* Fed. R. Evid. 103; *United States v. Williams*, 939 F.2d 721, 723 (9th Cir. 1991) (affirming district court's ruling *in limine* that prosecution could admit impeachment evidence under Fed. R. Evid. 609).

[18] *Barnard*, 2011 WL 221710, at *1 (quoting *Black's Law Dictionary* 1109 (9th ed. 2009)); *Research Corp.*, 2009 WL 2971755, at *1 (similar).

[19] *Ohler v. United States*, 529 U.S. 753, 758, n.3 (2000).

[20] *Barnard*, 2011 WL 221710, at *1 (citations omitted); *BNSF*, 2010 WL 4534406, at *1 (citations omitted); *Research Corp.*, 2009 WL 2971755, at *1 (citations omitted).

[21] *Barnard*, 2011 WL 221710, at *1 (citations omitted); *BNSF*, 2010 WL 4534406, at *1 (citations omitted); *Research Corp.*, 2009 WL 2971755, at *1 (citations omitted).

## B. *Rules 403 and 404*

As a general rule, Federal Rule of Evidence ("Rule") 404(b)(1) provides that evidence of a person's prior crimes, wrongs, or acts are inadmissible "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."[22] "The rule is designed to avoid a danger that the jury will punish the defendant for offenses other than those charged."[23] However, because such evidence may be highly relevant, Rule 404(b)(2) provides that evidence of a person's prior crimes, wrongs, or acts "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."[24] To introduce evidence under Rule 404(b), the Government must prove that the proposed evidence satisfies four requirements:

> (1) the evidence tends to prove a material point (materiality); (2) the other act is not too remote in time (recency); (3) the evidence is sufficient to support a finding that defendant committed the other act (sufficiency); and (4) … the act is similar to the offense charged (similarity).[25]

But even under this circumstance, "[t]he use of such evidence must be narrowly circumscribed and limited."[26]

If the Court finds these requirements are met, it must then determine, under Rule 403, whether the "probative value [of the evidence] is substantially outweighed by a danger of one or

---

[22] Fed. R. Evid. 404(b)(1); *see also United States v. Charley*, 1 F.4th 637, 645 (9th Cir. 2021).

[23] *Charley*, 1 F.4th at 647.

[24] Fed. R. Evid. 404(b)(2).

[25] *Charley*, 1 F.4th at 647.

[26] *Id.* (quoting *United States v. Bailleaux*, 685 F.2d 1105, 1109 (9th Cir. 1982)).

5

more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[27]

## IV.     DISCUSSION

Moi requests the following excerpts from the telephone and Facetime recordings be redacted, or otherwise removed, before the recordings are played for the jury:

- **Bates 16, Pg. 20**

MR. DWIGGINS: Like, I think that -- I mean, I just don't want you guys to be hotheaded and just -- it -- just it gets -- you know, because that's what these people try to do, you know?

- **Bates 17, Pg. 4**

MR. DWIGGINS: That's it. Well, I'm just not trying to have you come up here and get (indiscernible), that's all. I just worry about it, but whatever. I'm working on it –

- **Bates 17, Pg. 5**

MR. DWIGGINS: Yeah, is -- I just want to make sure you're not planning to come up here and do something stupid, bro, that's all.

- **Bates 18, Pg. 6**

MR. DWIGGINS: I get that. I'm just trying to – I'm just trying to talk some sense into the chill situation for a minute. This motherfucker – nobody's going nowhere, you know what I mean?
MR. MOI: I'm broke, my nigger, I'm broke.
MR. DWIGGINS: Okay. I –
M. MOI: I'm broke, man.
MR. DWIGGINS: Listen, I –
MR. MOI: I ain't got no time to chill right now, (indiscernible) I ain't got no chill, so (indiscernible) I don't have no chill, and I don't give a fuck because I don't have that right now, man. I can't have that right now, man. I ain't got no chill left. Okay? Let that shit just be happening like that. That's why I (indiscernible).
MR. DWIGGINS: Yeah, I know that he pull –
MR. MOI: That shit ain't cool.
MR. DWIGGINS: I know that he pulled that shit last time, and, you know what I mean?
MR. MOI: This is a business, and if you fuck up in this business, you get fired. If I fuck up at McDonald's, I'm gonna get fired on the fries. If I fuck up the fries, take some fries home, they gonna -- they gonna fire me for stealing. This shit happens. It's a business, bro.
MR. DWIGGINS: I get it, I get it.
MR. MOI: And this is just the type of -- you feel me? And this is just the type of business we in. It's nothing personal. It's strictly business, never personal.

---

[27] Fed. R. Evid. 403; *see also United States v. Vo*, 413 F.3d 1010, 1018 (9th Cir. 2005).

6

- **Bates 18, Pg. 8**

MR. DWIGGINS: Well, I mean, fuck, man, this shit's not right, man. And I don't feel safe -- I don't feel safe you coming up here, man. I don't -- I just don't know right now. I don't know. We ain't never not knowing, you know?

MR. MOI: Why don't you know with me coming up there? I've been up there, man. (Indiscernible) the other day, man.

- **Bates 20, Pg. 2**

MR. DWIGGINS: That's what – that's what's – that's what I'm trying to tell, you know, cous, that, you know, what's -- like, he's trying to like just, you know, come up here crazy, and I'm like, bro, people are being weird right now, dude, you know what I mean? Like, just chill. Like, chill for just a minute. I'm trying to find out what's up. I'm the one that's here right now, you know?

- **Bates 20, Pg. 5**

MR. DWIGGINS: Let -- just tell -- just tell him not to rush up here [referring to Moi], that's all I'm asking. We can -- we can come up in a day or two, you know what I'm saying, just not to rush it.

- **Bates 20, Pg. 9**

MR. DWIGGINS: But tell him just to chill, he don't need to rush up here, you know what I'm saying? Because, you know, we don't know any -- we don't really know the whole story yet, you know what I mean? And that's the key thing.

- **Bates 20, Pg. 14**

MR. DWIGGINS: -- you know, there ain't nothing that -- you know, coming up here and just doing all that shit, that -- I mean, you know, all that shit already happened. I ain't trying to go down that road again, bro. Fuck, man. I got -- like I said yesterday, shit, I would rather just fucking try to pay you back on it or something, you know? Shit.

- **Bates 25, Pg. 3**

MR. DWIGGINS: And I know cous -- I know he's hurting. I -- I – we're all hurting, man. I don't have any -- you know what I'm saying? But I'm not trying to freaking have any crazy shit happen, either, though, you know, with that -- with that dude's brother, like you said, like.

- **Bates 37**

MR. DWIGGINS: I'm trying to get it done because I want cous to get off my ass and fucking quit being all crazy and shit with me. He's freaking me out, like, the more he keeps doing this shit. You know? I've been nothing but –

…

I've been nothing but loyal and good to everybody, and he's just freaking me out right now with all this bullshit going on.[28]

Moi argues that the portions of the audio recordings he designated "are not relevant, are hearsay, and would tend to lead the jury to infer just what the agents did: Mr. Moi intended to kill Elliott."[29] If the jury drew such a conclusion, Moi argues, "the jury might [then] draw an improper inference about [Moi's] propensity for violent retaliation and murder."[30] Moi asserts that any probative value the government identifies, such as participation in the conspiracy, is cumulative of other evidence, including other statements made by Moi in the phone calls.[31]

The Government argues that the statements are probative of Moi's role in the enterprise and financial position.[32] The Governments asserts the statements "contain direct and explicit admissions that [Moi] is involved in the "business" of the enterprise" and argues that "the defendant's own words[] is some of the most powerfully probative evidence there is."[33] The Government argues that any potential for prejudice "is limited" because Moi does not express any intent to do anything beyond comparing his plans for the business to "fir[ing]" an employee from a fast food restaurant.[34]

---

[28] Dkts. 575-1, 575-2, 575-3, 575-4, 575-5, 575-6 (Transcripts of telephone and Facetime recordings).

[29] Dkt. 575 at 6–7.

[30] *Id.* at 6.

[31] *Id.*

[32] Dkt. 576 at 5.

[33] *Id.*

[34] *Id.*

The Court acknowledges that the audio recordings as a whole are probative of Moi's participation in a drug conspiracy. Now that Moi has requested to exclude specific portions of the recordings, the Court weighs the probative value of those specific portions against the possible prejudicial effect if they are introduced. The Court makes the following observations and conclusions regarding the segments of the audio recordings Moi requests are redacted. First, Moi correctly points out that some of the statements could be interpreted by jurors as Moi developing a plan to violently retaliate against Elliott, an alleged co-conspirator. Such an interpretation could result in a juror making the improper character-based inference that because Moi previously planned to violently retaliate against a co-conspirator, he similarly retaliated against Andrews.[35] Second, the Court notes that Moi's proposed redactions appear cumulative of other portions of the recordings which show Moi's involvement in the conspiracy and his financial position. Finally, even if the statements fell outside the scope of Rule 404, when the Court balances the prejudicial effect of the identified statements versus their probative value, the Court finds that the probative value is substantially outweighed by a danger of unfair prejudice.[36] For these reasons, the Court concludes that the segments of the recordings identified by Moi must be redacted from the recordings before the recordings are presented to the jury.

/ / /

/ /

/

---

[35] *See* Fed. R. Evid. 404.

[36] *See* Fed. R. Evid. 403.

## V. CONCLUSION

For the foregoing reasons, Defendant Moi's Motion *in Limine* at Docket 575 is **GRANTED. The Government shall provide to defense a copy of the redacted recordings it intends to submit for presentation to the jury at least two hours prior to their intended use.**

IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 24th day of February, 2022.

/s/ *Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE