**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:19-cr-00112-TMB-SAO-2 |
| Plaintiff, | |
| v. | ORDER ON DEFENDANT MOI'S SECOND MOTION TO ADMIT EVIDENCE (DKT. 603) |
| MATTHEW WILSON MOI, a/k/a "Matt Matt" | |
| Defendant. | |

## I.        INTRODUCTION

The matter comes before the Court on Defendant Matthew Wilson Moi's Second Motion to Admit Evidence (the "Motion").[1] Moi specifically moves to admit three rap videos created by and featuring Ebon Moore, a/k/a Guzzo Santana, entitled "All the Time," "Wake Up," and "M.O.B."[2] The Government opposes the Motion.[3] For the following reasons, Moi's Motion at Docket 603 is **GRANTED in part.**

## II.        BACKGROUND

Moi argues at trial, among other things, that Moore killed Navarrow Andrews. To support this argument, Moi asserts three music videos "created by and featuring Moore" should be admitted as evidence at trial because the videos are highly probative of third-party culpability.[4] If

---

[1] Dkt. 603 (Motion).

[2] *Id.* at 1.

[3] Dkt. 605 (Opposition).

[4] Dkt. 603 at 1.

permitted, Moi intends to introduce the videos through a music producer and another person "with firsthand knowledge of their production and content."[5]

### III.    LEGAL STANDARD

"There is no question that the defendant has the right to introduce evidence of third-party culpability."[6] The Ninth Circuit has explained that "all evidence of third-party culpability that is relevant is admissible, unless barred by another evidentiary rule."[7] Evidence is relevant if (1) "it has any tendency to make a fact more or less probable than it would be without the evidence" and (2) "the fact is of consequence in determining the action."[8] But the admission of third-party culpability evidence remains "subject to the discretion of the court to exclude cumulative evidence and to insure orderly presentation of a case."[9]

But as a general rule, Federal Rule of Evidence ("Rule") 404(b)(1) provides that evidence of a person's prior crimes, wrongs, or acts are inadmissible "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."[10] However, because such evidence may be highly relevant, Rule 404(b)(2) provides that evidence of a person's prior crimes, wrongs, or acts "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of

---

[5] *Id.*

[6] *Territory of Guam v. Ignacio*, 10 F.3d 608, 615 (9th Cir. 1993).

[7] *United States v. Espinoza*, 880 F.3d 506, 511 (9th Cir. 2018).

[8] Fed. R. Evid. 401.

[9] *United States v. Wells*, 879 F.3d 900, 937 (9th Cir. 2018) (quoting *United States v. Armstrong*, 621 F.2d 951, 953 (9th Cir. 1980)).

[10] Fed. R. Evid. 404(b)(1); *see also United States v. Charley*, 1 F.4th 637, 645 (9th Cir. 2021).

accident."[11] To introduce evidence under Rule 404(b), a party must prove that the proposed evidence satisfies four requirements:

> (1) the evidence tends to prove a material point (materiality); (2) the other act is not too remote in time (recency); (3) the evidence is sufficient to support a finding that defendant committed the other act (sufficiency); and (4) … the act is similar to the offense charged (similarity).[12]

But even under this circumstance, "[t]he use of such evidence must be narrowly circumscribed and limited."[13]

If the Court finds these requirements are met, it must then determine, under Rule 403, whether the "probative value [of the evidence] is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[14]

## IV.    DISCUSSION

Moi makes both general and specific arguments as to why the music videos should be admitted into evidence. Generally, Moi argues that the three "videos are autobiographical,"[15] depicting "real events and people," and are probative of Moore's "role in the murder of Navarrow Andrews, his role in the Shanholtzer drug and money-laundering conspiracies, and [] explain why others would be hesitant or reluctant to further identify him as the murderer of Andrews."[16]

---

[11] Fed. R. Evid. 404(b)(2).

[12] *Charley*, 1 F.4th at 647.

[13] *Id.* (quoting *United States v. Bailleaux*, 685 F.2d 1105, 1109 (9th Cir. 1982)).

[14] Fed. R. Evid. 403; *see also United States v. Vo*, 413 F.3d 1010, 1018 (9th Cir. 2005).

[15] Dkt. 603 at 2.

[16] *Id.*

According to Moi, the music videos "pose[] no danger of unfair prejudice to the government, and they are not barred by the rule against hearsay."[17] According to Moi, the videos will address disputes regarding "the nature of [Moore's] role and the extent of his involvement."[18] Moi suggests that the videos, which were produced by the same production company as Shanholtzer's music videos, "help establish the close connection between Shanholtzer and Moore."[19]

The Government, however, disputes whether the videos reveal anything about Moore's role and involvement in the alleged drug conspiracy.[20] The Government points to the facts that the videos include no references to members of the enterprise and that "Wake Up" was not released until after the Defendants were arrested. The Government also argues that the fact that Moore and Shanholtzer's music videos were produced by the same production company is not a meaningful connection.

The Court is not persuaded by Moi's general explanations for why the videos are relevant. First, the videos themselves do not show Moore's relationship to the Defendants or the Shanholtzer criminal enterprise. Moreover, the mere fact Moore and Shanholtzer hired the same video production company to produce their music videos, or that both are rappers does not show that Moore and Shanholtzer had a close connection. Second, even if Moi can show that elements of the videos reflect kernels of truth about Moore's life, the Court is reluctant to associate the lyrics as a

---

[17] *Id.*

[18] *Id.* at 3.

[19] *Id.*

[20] Dkt. 605 at 2–3.

whole to facts about the life or character of Ebon Moore.[21] It is the Court's understanding that Moore himself will not testify in this trial.[22]

The Court, however, finds Moi's arguments about the specific music videos more persuasive and will allow Moi to introduce "All the Time" and a portion of "Wake Up" as follows.

### A. *"All the Time"*

"All the Time" may be admitted for the purpose of showing Moore had a connection to Maryssa Poindexter. "All the Time" was released on YouTube on April 30, 2017, before the death of Andrews.[23] According to Moi, "All the Time" is relevant and probative of Moore's connection to Maryssa Poindexter, who received calls from the phone found at the crime scene on the night of Andrews's death.[24] In "All the Time," Moore refers to "Murder Mook," which according to Moi was a nickname for Poindexter. Poindexter herself also makes an appearance in "All the Time."[25]

The Government is skeptical of the probative value of "All the Time."[26] The Government argues that the evidence is cumulative as "[t]he record already contains evidence that Moore's phone was in contact with Poindexter's number in March and April 2019."[27] The Government

---

[21] *See United States v. Williams*, Case No. 3:13-cr-00764-WHO-1, 2017 WL 4310712, at *7–8 (N.D. Cal. Sept. 28, 2017).

[22] Dkt. 603 at 8 ("evidence will establish that Moore fled Alaska after finding out that Shanholtzer had agreed to cooperate with law enforcement in this case")

[23] *Id.* at 3.

[24] *Id.* at 4.

[25] *Id.*

[26] Dkt. 605 at 3 (The Government refers to the video as "at best minimally probative.").

[27] *Id.*

asserts that the introduction of the video will create a risk that the jury will perceive Moore as a violent person, which would substantially outweigh any probative value of the evidence.[28]

The Court agrees with Moi that "All the Time" is admissible here to show a relationship between Moore and Poindexter. This evidence does not appear cumulative as it is offered to show a relationship between Moore and Poindexter, not contact between the crime scene phone and Poindexter. The Court does not find that the probative value of this video is substantially outweighed by the risk the jury will conclude that Moore is actually a violent person. For these reasons, the Court will permit Moi to admit "All the Time."

### B. *"Wake Up"*

"Wake Up" may be admitted for the limited purpose of showing Moore had access to a Glock handgun.

Moi argues that "Wake Up" should be admitted to (1) show Moore's access to a Glock handgun, (2) show Moore's willingness to talk about using a Glock handgun to kill people, and (3) is reflective of Moore's desire to retaliate against someone who he thinks has wronged him.[29] "Wake Up" was released on YouTube on June 24, 2020.

Moi also argues that "Wake Up" "show[s] that Moore writes and raps about real people and real incidents, including violent ones, that effect or involve him."[30] Moi cites two examples, first "the video notes the recent death of 'Uncle Danny.'" Second, in the video Moore apparently refers to an application for a restraining order against him by Cheyenne Whybark-Marshall, rapping "Baby momma trip about everything, I don't understand." Evidence was presented in trial

---

[28] *Id.* at 4.

[29] Dkt. 603 at 5.

[30] *Id.*

that on the night of Andrews's death, someone used the phone found at the crime scene to call Whybark-Marshall numerous times just hours before Andrews's death.

The Government concedes that images or silent excerpts from the video "are admissible to show that Moore potentially had access to a pistol."[31] But the Government objects to the introduction of the entire video. As the Government points out, it is not clear if the lyrics are referring to Whybark-Marshall or why the music video is necessary to establish a relationship between Moore and Whybark-Marshall.[32]

The Court finds that "Wake Up" is admissible to show that Moore had access to a Glock handgun, similar to the one suspected to have been used in Andrews's death. For these reasons, the Court permits Moi to admit the first minute of the "Wake Up" music video with audio that shows Moore with a Glock handgun.

**C. "M.O.B."**

Finally, the Court concludes that the "M.O.B." music video is inadmissible. The "M.O.B." video was released less than two months after Andrews's death, but the filming of the video began in late 2018.[33] Moi argues the "M.O.B." video should be admitted for several reasons, including: (1) that lyrics purportedly describe a violent incident at the Northway Mall in Anchorage; (2) for the lyrics effect on listeners; and (3) to impeach testimony by Shanholtzer.

The Government objects to the admission of the "M.O.B." video because there is a significant danger that the jury will use this out of court statement to establish the truth of the matter asserted, in violation of Fed. R. Evid. 802. The Government fears a jury would improperly

---

[31] Dkt. 605 at 2.

[32] *Id.* at 4.

[33] Dkt. 603 at 7 ("The video was filmed over the period of late 2018 through its release, including the period surrounding the murder.").

conclude that because Moore acted violently on a prior occasion mentioned in a music video, he would be more likely to have acted violently on April 8, in violation of Fed. R. Evid. 404(b)(1).

The Court finds that admission of the "M.O.B" music video is likely to confuse the jury. At the outset, the Court notes it is not clear that the lyrics in "M.O.B." are responsive to the killing of Andrews. The "M.O.B." music video was already in production at the time Andrews was killed. But even if the Court considered the lyrics of "M.O.B." probative, the Court notes that no party has argued that Andrews was killed for suspicion of being a snitch. The Court, however, finds that Moi appears to be trying to admit evidence that Moore is violent or dangerous to show that it is more likely than not that Moore acted in particular way on the night Andrews was killed. The Court recognizes in certain circumstances that the lyrics in "M.O.B." may be admissible for their effect on the listener, however, foundational evidence has not been laid here. As the Government argues, the parties have not presented evidence that any of the witnesses listened to Moore's music,[34] or "M.O.B." for that matter, or that any witnesses believed based on the "M.O.B." video that Moore was dangerous. In fact, one witness at the trial was willing to identify Moore as the getaway driver in Andrews's killing.[35] Finally, it is not apparent to the Court that the timing of the "M.O.B." video impeaches Jordan Shanholtzer's trial testimony. It appears that Moi argues "M.O.B." definitively shows Moore's involvement in Andrews's death and when Shanholtzer first learned of Moore's involvement. Yet without additional facts, the Court is unable to draw the same conclusion.

---

[34] Individuals have testified that they knew Moore to be a rapper.

[35] The witness is a known subscriber to Moore's YouTube channel based on evidence introduced at trial.

For these reasons, the Court concludes that the M.O.B. music video is inadmissible that this time.

### D.  CONCLUSION

For the foregoing reasons, Defendant Moi's Second Motion to Admit Evidence at Docket 603 is **GRANTED in part.**

IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 8th day of March, 2022.

/s/  *Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE